UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
:
UNITED STATES OF AMERICA,                               :
                                                        :
        - against -                                     :
                                                        :     24-CR-429 (VSB)
LEROI BOUCHE,                                           :
                                                        :     **OPINION & ORDER**
                        Defendant.                      :
                                                        :
--------------------------------------------------------X

VERNON S. BRODERICK, United States District Judge:

Defendant Leroi Bouche ("Defendant" or "Bouche") is charged in three counts with (1) robbery, in violation of 18 U.S.C. § 1951(b) (Count One (Hobbs Act Robbery)); (2) using, carrying, possessing, and brandishing a firearm in furtherance of the robbery, in violation of 18 U.S.C. § 924(c)(1)(A)(i) and (ii) (Count Two (Firearms Use, Carrying, and Possession)); and (3) possessing a firearm after being convicted of a felony, in violation of 18 U.S.C. § 922(g)(1) (Count Three (Possession of a Firearm After a Felony Conviction)). Before me is Defendant's motion to dismiss Count Three as unconstitutional based on the Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). Because I find that, under binding Second Circuit precedent, § 922(g)(1) is a valid constitutional restriction on the Second Amendment rights of convicted felons and is consistent with the historical tradition of firearms regulation in the United States, Defendant's motion to dismiss Count Three is DENIED.

**I.    Factual Background**[1]

On or about May 20, 2024, Defendant entered a smoke shop (the "Smoke Shop") in Manhattan, New York, "which operates in interstate commerce by selling products that are

---

[1] The facts in this section are from the Complaint, (Doc. 1), and are provided to provide context and background.

manufactured all across" the United States. (Doc. 1 at 2.) Defendant threatened one of the Smoke Shop's employees, ("Employee-1"), with a "gun visible in his right hand," "dragged" Employee-1 to the front counter, "slammed" Employee-1 against the counter, and demanded money as he pressed the muzzle of the gun to Employee-1's temple. (*Id*.) After Employee-1 pointed Defendant to the cash register, Defendant "grabbed some of the cash from the register" and "appeared to stuff the cash into his left pants pocket." (*Id*.) Thereafter, as Defendant was shouting at another Smoke Shop employee, ("Employee-2"), Employee-1 left the Smoke Shop and locked Defendant, along with Employee-2, inside the Smoke Shop and pulled down the roll-down gate over the Smoke Shop storefront. (*Id*. at 2–3.) Defendant followed Employee-2 to the backroom. (*Id*. at 3.) Defendant "shoved Employee-2 to the side and went to a window in the backroom that was covered in black plastic and opened the window." (*Id*.) While Defendant "was at the backroom window, Employee-2 ran out of the backroom," Defendant "opened the window, with the gun still in hand," and then followed Employee-2 to the front door of the Smoke Shop. (*Id*.) "At or about the time Employee-1 pulled up the roll-down gate," New York Police Department ("NYPD") officers arrived. (*Id*.) Then, Defendant "went into the backroom and stood bent over at the open window for approximately a few seconds." (*Id*.) When the Defendant "turned around to exit the backroom, [he] no longer appeared to be holding a gun." (*Id*.) After Employee-2 kicked open the front door and exited the Smoke Shop, Defendant exited through the front door. (*Id*.) When searching Defendant's body, NYPD officers "did not find a gun on him." (*Id*.) However, "when one of the NYPD officers walked to a parking lot just outside the backroom window, he found a . . . handgun on the ground." (*Id*.) A Task Force Officer identified the Defendant as the robbery suspect depicted on the surveillance and body cam videos from May 20, 2024. (*Id*. 2–4.)

At the time of the robbery, Defendant "had four prior felony convictions, including at least two for which he was still on post-release supervision: (1) on May 20, 2015, Bouche was convicted of attempted aggravated assault on a police officer with a deadly weapon and sentenced that same day to 9 years' imprisonment and 5 years' post-release supervision, which began on September 22, 2022; (2) on September 18, 2014, Bouche was convicted of criminal possession of a controlled substance in the third degree and sentenced on May 20, 2015 to 2 years' imprisonment and 2 years' post-release supervision, which began on September 22, 2022; (3) on May 21, 2010, Bouche was convicted of unlawful imprisonment in the first degree and sentenced on August 20, 2010 to 15 months to 4 years' imprisonment; (4) on March 23, 2004, Bouche was convicted of robbery in the second degree and sentenced on April 20, 2004 to 5 years' probation, then, upon violating his probation, resentenced on April 20, 2005 to 1 to 3 years' imprisonment." (Doc. 22 ("Gov's Opp.") at 2.)

## II. Procedural History

On May 20, 2024, Defendant was arrested and the following day he was charged in the Complaint with Hobbs Act Robbery and using, carrying, and possessing a firearm in connection with that Hobbs Act Robbery. On July 17, 2024, Defendant was indicted and charged in three counts with: (1) committed Hobbs Act Robbery on May 20, 2024; (2) using, carrying, and possessing a firearm on May 20, 2024, during and in relation to the Hobbs Act Robbery; and (3) possession of a firearm on May 20, 2024, after a felony conviction. (Doc. 8.)

On April 18, 2025, Defendant filed the instant motion to dismiss and memorandum of law in support of the motion to dismiss, (Doc. 20 ("Def.'s Mem.")).[2] On May 28, 2025, the

---

[2] On April 9, 2025, Defendant emailed a pro se motion to dismiss to the Court. On April 16, 2025, I directed Defendant's counsel to file Defendant's pro se motion to dismiss and any supplement to the motion. On April 18, 2025, Defendant filed the instant motion to dismiss, (Doc. 20.)

Government filed its memorandum of law in opposition, (Doc. 22 ("Gov's Opp.")). The Defendant did not file a reply. On June 10, 2025, the Government filed a letter bringing to my attention the Second Circuit decision in *Zherka v. Bondi*, 140 F.4th 68 (2d Cir. 2025). (Doc. 23).

### III. Legal Standard

The Second Amendment protects "an individual right to keep and bear arms for self-defense." *Bruen*, 597 U.S. at 17. "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id*. For a regulation of such conduct to pass constitutional muster, "[t]he government must . . . justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."[3] *Id*. at 24. The framework for assessing whether a regulation is "consistent with the Nation's historical tradition of firearm regulation" differs according to the nature of the problem the regulation is meant to solve. *Id*. "For instance, when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id*. at 26. However, "unprecedented societal concerns or dramatic technological changes may require a more nuanced approach." *Id*. at 27.

"When confronting such present-day firearm regulations, this historical inquiry that courts must conduct will often involve reasoning by analogy." *Id*. at 28. "[A]nalogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin." *Id*. at 30 (emphasis omitted). In other words, "a modern-day regulation" need not be "a dead ringer for historical precursors" to survive

---

[3] *Bruen* replaced the so-called means-end scrutiny of the regulation previously adopted by the Supreme Court. *See* 597 U.S. at 17–19.

4

constitutional scrutiny. *Id.* Instead, the regulations must be "relevantly similar" in light of "at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 29.

While Defendant's motion was pending, the Second Circuit decided *Zherka*, which affirmed the constitutionality of § 922(g)(1) and reaffirmed the continued viability of its pre-*Bruen* case, *United States v. Bogle*, 717 F.3d 281 (2d Cir. 2013). *Zherka*, 140 F.4th at 74–75.[4]

### IV. Discussion

Defendant argues that 18 U.S.C. § 922(g)(1) is unconstitutional facially and as applied to him. (Def.'s Mem. 3.) As an initial matter, he argues that rather than rely on *Bogle*, 717 F.3d 281, I should address the merits of his argument, undertake the *Bruen* analysis, and put the Government to its historical burden. (*Id.* at 3–6.) As part of his argument that 18 U.S.C. § 922(g)(1) is unconstitutional on its face, Defendant argues that the Second Amendment's plain text covers the conduct regulated by § 922(g)(1). (*Id.* at 5.) Specifically, he argues that the phrase "the people" in the Second Amendment "guaranteed to all Americans the right to bear commonly used arms," includes those with prior felony convictions. (*Id.* at 3–4 (citing *Bruen*, 597 U.S. at 70 (internal quotations omitted)).) Then Defendant argues that given that his alleged conduct "is covered by the Second Amendment text," the Government bears the burden of demonstrating that § 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation. (*Id.* at 6.) Defendant ultimately argues that the Government cannot carry its burden because "state laws prohibiting felons from possessing firearms . . . date from the . . . twentieth century" and thus cannot establish a "historical analogue" under the standard articulated in

---

[4] As noted, on June 10, 2025, the Government filed a letter bringing *Zherka* to my attention. (Doc. 23.) Defendant did not file a response to the Government's letter or otherwise address the holding in *Zherka*.

5

*Bruen*. (*Id*. at 6–7 (internal quotations and citation omitted).) Specifically, he argues that "[t]here is no [] historical tradition" imposing a lifelong firearms ban for felons "at or near the time the Second Amendment was ratified in 1791." (*Id*. at 2.)

Defendant further contends that § 922(g)(1) is unconstitutional as applied to him because he "has not sustained a felony conviction in more than 3 years" and "[o]nly one founding-era statute appears to have imposed *any* form of prospective restrictions on gun possession based on a prior conviction." (*Id.* at 8 (emphasis in original).)

In response, the Government makes four arguments, including, among others, that: (1) *Bogle*, 717 F.3d 281, *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010) all confirm the constitutionality of § 922(g)(1)'s prohibition on the possession of firearms by felons; (2) *Bruen* does not undermine the lawfulness of § 922(g)(1) or the validity of *Bogle*; (3) the text and history confirm that § 922(g)(1) is consistent with the Second Amendment; and (4) Defendant falls within the historically excludable class. (Gov.'s Opp 9–26.)

For the reasons set forth below, Defendant's facial and as-applied challenges to the § 922(g)(1) count fail.

    A.    *Defendant's Facial Challenge*

Defendant first argues that the historical analysis required by *Bruen* renders § 922(g)(1) facially unconstitutional because the government cannot establish that the statute has an "analogue to a categorical, permanent, and prospective bar on gun ownership." (Def.'s Mem. 6.) Defendant is wrong. In *United States v. Williams*, No. 23-CR-218, 2023 WL 8355891, at *5 (S.D.N.Y. Dec. 1, 2023) and *United States v. Ayala*, 740 F. Supp. 3d 314, 325–28 (S.D.N.Y. 2024), I considered and rejected an identical facial challenge, holding that *Bruen* does not

6

undermine § 922(g)(1) for two independent reasons. First, I held that § 922(g) is constitutional under binding Second Circuit precedent. Specifically, I explained that the Second Circuit's decision in *Bogle*, 717 F.3d 281, which adopted the dicta in *Heller*, 554 U.S. 570, and *McDonald*, 561 U.S. 742, in holding that "§ 922(g)(1) is a constitutional restriction on the Second Amendment rights of convicted felons" was undisturbed by *Bruen*. *Williams*, 2023 WL 8355891, at *3 (quoting *Bogle*, 717 F.3d at 281–82); *see also Ayala*, 740 F. Supp. at 326 (same).

"Second, and independent of *Bogle*, I held that 'the Government [] met its burden of demonstrating a historical tradition of firearms regulation that is sufficiently analogous to § 922(g)(1) to uphold the statute's legitimacy.'" *Id.* (quoting *Williams*, 2023 WL 8355891, at *4). Specifically, I accepted the Government's argument, advanced in both *Williams* and *Ayala* and repeated here, that "the historical record shows that legislatures historically disqualified categories of persons from possessing firearms, just as felon-dispossession statutes do today." (Govt.'s Opp. 23; *see also Williams*, 2023 WL 8355891, at *4–5; *Ayala*, 740 F. Supp. at 326). Here, the Government has similarly met its burden. Defendant's motion does not raise any new arguments or issues that would compel me to reconsider any aspect of the historical record, or my analysis of that record's import, as set forth in detail in *Williams*. *See* 2023 WL 8355891 at *3–5.

Critically, on June 9, 2025, the Second Circuit issued its decision in *Zherka* which addressed the precise issues raised by Defendant, confirming that its holding in *Bogle* remains good law after *Bruen*, and reaffirming that § 922(g)(1) remains a constitutional restriction on the Second Amendment for individuals convicted of felonies. 140 F.4th at 74–75; *see also United States v. Sabree*, 2025 WL 2202955, at *1 (2d Cir. Aug. 4, 2025) (summary order) (noting that the *Bogle* "upheld the constitutionality of section 922(g)(1) against a facial challenge" and

7

*Zherka* "confirmed that . . . *Bogle* remains good law after *Bruen*."). "In *Zherka v. Bondi*, the Second Circuit explicitly confirmed that § 922(g)(1) is facially constitutional and survives *Bruen*." *Jackson v. United States*, No. 21-CR-386, 2025 WL 1928029, at *2 (S.D.N.Y. July 14, 2025) (citing *Zherka*, 140 F.4th at 75). *Zherka* therefore forecloses Defendant's facial challenge that § 922(g)(1) is unconstitutional.

### B.    *Defendant's As-Applied Challenge*

Defendant also argues that § 922(g)(1) is unconstitutional as applied to him, a member of "the people" protected by the Second Amendment. (Def.'s Mem. 2.) As an initial matter, Defendant does not identify any binding authority suggesting that § 922(g)(1) is subject to an as-applied Second Amendment challenge by convicted felons. As I have previously found, "there is no basis to draw distinctions under § 922(g)(1) based on the underlying felony conviction." *Ayala*, 740 F. Supp. 3d at 327 (quoting *United States v. Crawford*, No. 23-CR-566, 2024 WL 1657879, at *5 (S.D.N.Y. Apr. 17, 2024)). Moreover, although Defendant argues that § 922(g)(1) is unconstitutional as applied to him because he "has not sustained a felony conviction in more than 3 years," (Def.'s Mem. 8), *Zherka* disposes of Defendant's argument because it "clarified that § 922(g)(1) is constitutional as applied to convicted felons, regardless of whether the crime of conviction is violent or nonviolent." *United States v. Miller*, No. 23-7699-CR, 2025 WL 2202524, at *4 (2d Cir. Aug. 4, 2025) (citing *Zherka*, 140 F.4th 92–93 ("Because legislatures at or near the Founding had the authority to pass laws disarming large classes of people based on status alone, we conclude that the Second Amendment does not bar Congress from passing laws that disarm convicted felons, regardless of whether the crime of conviction is nonviolent.")). The Second Circuit thus concluded that as-applied challenges are foreclosed because § 922(g)(1) is constitutional in all of its applications. *See Zherka*, 140 F.4th at 93

(denying an as-applied challenge because "[t]here is no historical basis upon which we could declare Section 922(g)(1) unconstitutional because it sweeps too broadly" and noting that "[b]ecause history reveals a tradition of categorical legislative bans on firearms possession by classes of people perceived as dangerous, a prohibition directed at persons convicted of serious crimes is among the easiest classifications to justify"); *see also United States v. Espinal*, No. 24-2110, 2025 WL 2301894, at *2 (2d Cir. Aug. 11, 2025) ("We recently addressed the constitutionality of § 922(g)(1) and affirmed that the felon-in-possession law is facially constitutional and held that it is not subject to as-applied challenges."); *Miller*, 2025 WL 2202524, at *4 ("*Zherka* therefore forecloses [defendant's] argument that § 922(g)(1) is unconstitutional, both facially and as-applied to his conviction."); *United States v. Acevedo*, No. 24-67-CR, 2025 WL 2166773, at *1 (2d Cir. July 31, 2025) (noting that *Zherka* held "that § 922(g)(1) is constitutional both facially and as applied to convicted felons" and holding that "[b]ecause [the] reasoning in *Zherka* applies with equal force here, [defendant's] facial and as applied challenges to the constitutionality of § 922(g)(1) fail."). In *Zherka*, the Second Circuit held that because § 922(g)(1) "constitutionally disarms felons as a class," there is no due process right for individuals with felony convictions to seek individualized relief from the categorical ban based on their particular criminal history or circumstances. 140 F.4th at 96; *see also id.* at 94 ("[A]ny effort by the courts to craft a line that would separate some felons from others is fraught with peril. The idea that every felon, regardless of the crime of conviction, is entitled to some form of hearing as to whether that particular individual should be subject to a lifetime ban on firearms possession is inconsistent with the historical tradition permitting class-based legislative judgments.").

Therefore, Defendant's as-applied challenge to § 922(g)(1) fails, and Defendant's motion to dismiss the 922(g)(1) count is DENIED.

### V.     Conclusion

For the foregoing reasons, Defendant's motion is DENIED in its entirety. The Clerk of Court is respectfully directed to terminate the open motion at Doc. 20.

SO ORDERED.

Dated: August 14, 2025
    New York, New York

                                            Vernon S. Broderick
                                            United States District Judge